# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: ) | **JUDGE RICHARD L. SPEER** |
| Russell/Sarah Grant ) | |
| ) | Case No. 07-3221 |
| Debtor(s) ) | |
| ) | (Related Case: 07-33195) |
| Sarah Grant ) | |
| Plaintiff(s) ) | |
| v. ) | |
| USA, Dept. of Ed., et al. ) | |
| Defendant(s) ) | |

## DECISION AND ORDER

This cause comes before the Court after a Trial on the Plaintiff/Debtor's Complaint to Determine Dischargeability. At issue at the Trial was whether the Plaintiff was entitled to receive a discharge of those obligations she incurred to finance her higher education pursuant to the "undue hardship" standard set forth in 11 U.S.C. § 523(a)(8). After considering the evidence presented at the Trial, as well as the arguments made by the Parties, including the Post-Trial Briefs filed by the Defendants, the Court, for the reasons set forth herein, declines to grant the relief requested by the Plaintiff.

Sarah Grant v. USA, Dept. off Education, et al.
Case No. 07-3221

## FACTS

The Plaintiff/Debtor, Sarah D. Grant (hereinafter the "Plaintiff"), is a married woman, 30 years of age. She has three minor children. Both the Plaintiff and her husband, Russell M. Grant, III, are debtors, having filed, on July 25, 2007, a joint petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code.

For the past year, the Plaintiff has been employed as a part-time nurse for a retirement home. With this employer, the Plaintiff presently works between 24 and 32 hours per week. For her services, the Plaintiff receives compensation at the rate of $21.90 per hour. The Plaintiff's husband, age 35, is also employed, working normally 40 hours per week at an hourly rate of $19.00.

The Debtors own their own home, valued at $115,000.00. The Debtors also have two vehicles: a 2002 Honda Odyssey; and a 1997 Chevrolet Suburban. With the exception of the 1997 vehicle, these assets are fully encumbered. The Debtors do not have any other assets of significant value.

The Debtors only source of income is derived from their employment. For the tax year 2006, the Debtors' gross annual income was $83,213.00; for the 2005 tax year, their gross annual income was $62,514.00. In both these years, the Debtors also received refunds for federal and state tax overpayments in the respective amounts of $1,876.00 and $4,258.00. Against their income, the Debtors put forth that their monthly budget only affords them a minimal surplus.

In the fall of 2003, after the birth of her third child, the Plaintiff enrolled as a student in a local community college to pursue a degree in nursing. Around two years later, the Plaintiff obtained her nursing degree. Immediately after graduating, the Plaintiff found full-time employment as a nurse, earning over $40,000.00 per year.

Page 2

To finance her education, the Plaintiff obtained loans, totaling approximately $80,000.00. Of this amount, the Plaintiff utilized approximately $55,000.00 to pay for "living expense." The remaining $25,000.00 went to pay for tuition and other educational related expenses.

The educational loans made to the Plaintiff are now held by the Defendants, Educational Credit Management Corporation ("ECMC"), and The Education Resources Institute ("TERI"). With the exception of a few minor payments, each totaling $88.00, the Plaintiff has not paid either of the Defendants since the loans became due. Interest and penalties have accrued as a result. At the time of the Trial held in this matter, the loan balances to the Defendants stood at $111,455.34. Of this amount, $19,845.09 was owed to ECMC; $91,610.25 was owed to TERI.

In 1997, five years prior to her matriculation in nursing school, the Plaintiff was involved in a serious auto accident which necessitated surgery on her back. A year later, the Plaintiff received a settlement for her injuries. After payment of her legal expenses, this settlement netted the Plaintiff $100,000.00. A substantial portion of these funds were then used by the Plaintiff and her husband for the following: credit card repayment; a vehicle purchase; a house purchase; and house related repairs and improvements. At the time she started nursing school, the proceeds from her settlement had been completely depleted.

While employed full time as a nurse, the Debtor reaggravated her back injury. This condition, it was explained, stemmed from the demands of her job which required her to lift and move heavy loads, particularly patients. Workers' compensation was subsequently denied for this injury based upon it being a preexisting condition. The Debtor further explained that due to the aggravation of her injury, she was forced to seek alternative employment where no heavy lifting would be required. This lead to the Debtor obtaining her present position as a part-time nurse with a retirement home.

Sarah Grant v. USA, Dept. off Education, et al.
Case No. 07-3221

# DISCUSSION

In her Complaint, the Plaintiff seeks a determination that those obligations she incurred to finance her education are dischargeable debts based upon the "undue hardship" exception to nondischargeability set forth in 11 U.S.C. § 523(a)(8). This section provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> > (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for–
> >
> > > (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> > >
> > > > (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> > >
> > > (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

Pursuant to 28 U.S.C. § 157(b)(2)(I), a determination regarding the issue of "undue hardship" under § 523(a)(8) is a core proceeding over which this Court has jurisdiction to enter final orders and judgments. 28 U.S.C. §§ 157(a) and 1334.

A primary goal of the Bankruptcy Code is to afford a debtor a fresh start. In conformity with this policy, most types of debts are dischargeable in bankruptcy. For certain types of debts, however, Congress determined that competing interests of public policy outweigh a debtor's need for a fresh start. *Merrill v. Merill (In re Merrill)*, 252 B.R. 497, 503 (10th Cir. B.A.P. 2000)

Page 4

**Sarah Grant v. USA, Dept. off Education, et al.**
Case No. 07-3221

Beginning in 1976, obligations incurred by a debtor to finance a higher education have fallen within the category of debts which are not subject to being discharged in bankruptcy. The policy reasons underlying this decision: (1) the perceived need to rescue the student-loan program from potential insolvency; and (2) the goal of preventing abuse of the bankruptcy system by students who finance their higher education through the use of government-guaranteed loans, but later file bankruptcy petitions for the purpose of discharging their educational debt. *See* Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 93-137, 93rd Cong., 1st Sess., Pt. II 140, n. 14 (1973); *Green v. Sallie Mae Servicing Corp. (In re Green)*, 238 B.R. 727, 732-33 (Bankr. N.D.Ohio 1999).

However, notwithstanding these policy concerns, Congress also determined that exceptional circumstances could exist which would warrant carving out an exception to the general rule that student-loan debts were nondischargeable. To that end, Congress permitted student-loan debts to be discharged if the debtor could demonstrate that repaying the loan would impose an "undue hardship" upon the debtor and/or debtor's dependents. 11 U.S.C. § 523(a)(8). As used in § 523(a)(8), the term "undue hardship" is not defined. At a minimum, however, it is established that "undue hardship" denotes a heightened standard, requiring a showing beyond the garden-variety financial hardship experienced by most debtors who seek bankruptcy relief. *In re Frushour*, 433 F.3d 393, 400 (4th Cir. 2005).

For the heightened standard of "undue hardship," the Sixth Circuit Court of Appeals held, in the case of *Oyler v. Educational Management Credit Corp. (In re Oyler)*, 397 F.3d 382 (6th Cir. 2005), that a court should apply what is known as the Brunner test, named after the case of *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2nd Cir.1987). Under this test, a student loan will only be discharged if the following three elements are shown to exist:

Page 5

**Sarah Grant v. USA, Dept. off Education, et al.**
**Case No. 07-3221**

> (1) That the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;
>
> (2) The additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans;
>
> (3) That the debtor has made good faith efforts to repay the loans.

*Id.* at 399-400. It is the debtor's burden to establish the existence of each of these elements by a preponderance of the evidence. *Pa. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3rd Cir. 1996).

Regarding the first element of the Brunner test, the ability to repay the loan, the undisputed facts show that the Debtors have the ability to allocate financial resources to repay the Plaintiff's student-loan obligation. The financial figures provided by the Debtors show that presently the Plaintiff works 32 hours per week at an hourly rate of $21.90, amounting to $700.80 per week or $36,441.60 per year. The Plaintiff's husband works a 40-hour work week at an hourly rate of $19.00, totaling $760.00 per week or $39,520.00 per year. Thus, for the year 2008, the Debtors' household income will be approximately $76,000.00, a level of income which places the Debtors firmly beyond what is enjoyed by a substantial percentage of debtors who appear before this Court. In 2008, the median income for a family of five in the state of Ohio was $77,432.00.[1]

While debtors who earn near or above the median income are not necessarily excluded from having their student loans discharged, it is also true that the higher the level of a debtor's income, the more difficult it becomes to reconcile the debtor's financial situation with the concept of "undue hardship." In this regard, the question under the first prong of the Brunner Test is not whether a

---

[1] http://www.usdoj.gov/ust/eo/bapcpa/20080317/bci_data/median_income_table.htm.

Page 6

debtor's current budget affords the ability to repay the student loan, but whether the debtor could not maintain a 'minimal' standard of living if forced to repay the student loan. Concerning this, this Court has noted that, although the minimal standard of living threshold does not require that a debtor live in abject poverty, it does envision that a debtor do some belt-tightening and forego amenities to which he or she may have become accustomed. *Lowe v. ECMC (In re Lowe)*, 321 B.R. 852, 857-58 (Bankr. N.D.Ohio 2004).

Looked at in this light, while the Debtors' monthly budget shows very little surplus, there does exist room for the Debtors to tighten their financial belt. To give but one example, no justification was offered regarding the necessity of the Debtors allocating $185.00 per month for phone service to service both a land line and cell phones. More noticeable, however, the evidence tends to show that the Debtors' 2008 yearly income is artificially low. First, the Debtors have traditionally received tax refunds which, since they arise from a tax overpayment, are counted as a source of income. Secondly, the Plaintiff acknowledged that, so long as the physical demands of the job do not affect her back condition, she could modestly increase her salary by seeking full-time employment. This conforms with past trends, with the Debtors' 2006 household income being slightly higher at $83,213.00.

Considering, therefore, the extent of the financial resources available to the Debtors, together with their ability to tighten their budget, the Debtors' financial situation simply does not allow a finding that the Plaintiff has sustained her burden under the first prong of the Brunner Test. This conclusion was, at some level, even recognized by the Plaintiff who, when questioned by opposing counsel at the Trial held in this matter, acknowledged that she could pay some portion of her student-loan debt. In this respect, the Plaintiff asked the Court, in the absence of a full discharge, to recognize in its ruling that, while she may have the ability to pay some portion of her student-loan debt, her financial situation does not afford her the ability to repay the obligation in full.

Page 7

**Sarah Grant v. USA, Dept. off Education, et al.**
**Case No. 07-3221**

In line with the Plaintiff's position, it had been a practice of this Court that, even where a debtor was not entitled to an "undue hardship" discharge of their student loans, relief could still be afforded to the debtor through an equitable adjustment of the debt. *See, e.g., Flores v. United States Dep't of Educ. (In re Flores)*, 282 B.R. 847, 853 (Bankr.N.D.Ohio 2002). In many instances this would entail providing the debtor with a partial discharge of their student-loan debt; it could, however, also include altering the terms of the loan such as adjusting the interest rate. *See, e.g., Siegel v. U.S.A. Group Guarantee Servs. (In re Siegel)*, 282 B.R. 629 (Bankr. N.D.Ohio 2002) (providing partial discharge and eliminating all accruing interest). As authority for this type of action, this Court relied on 11 U.S.C. § 105(a) which provides that the bankruptcy "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

This approach, however, was squarely rejected by the Sixth Circuit Court of Appeals in *Miller v. Pennsylvania Higher Educ. Asst. Agency (In re Miller)*, with the Court stating:

> Section 523(a)(8) permits the discharge of student loans only upon a finding that denying such discharge would impose undue hardship on the debtor. Relying on § 105 to discharge student loan indebtedness for reasons other than undue hardship impermissibly contravenes the express language of the bankruptcy code.

377 F.3d 616, 624 (6th Cir. 2004) (internal citation omitted). Thus, according to the Sixth Circuit, "the requirement of undue hardship must always apply to the discharge of student loans in bankruptcy–regardless of whether a court is discharging a debtor's student loans in full or only partially." *Id.* at 622.

Accordingly, while *In re Miller* does not absolutely preclude the entry of a partial discharge, it does remove § 105(a) as an independent source for providing this type of equitable relief, with any type of discharge concerning a student-loan debt expressly conditioned upon a finding of "undue hardship." This, as previously observed by the Court, creates a rather anomalous situation. As

Page 8

explained in the case of *Lowe v. ECMC (In re Lowe)*: if repaying a portion of the student-loan would impose upon the debtor an "undue hardship," thereby justifying a partial discharge, does it not follow that the repayment of the full student loan, an amount which is by definition larger, would similarly impose upon the debtor an "undue hardship," thus also warranting the full discharge of the student loan. 321 B.R. 852, 863-64 (Bankr. N.D.Ohio 2004) (explaining in detail this dichotomy). Looked at from a numerical perspective, this question arises: How could the existence of "undue hardship" found to be lacking when involving the repayment of a $100,000.00 student loan, but then be found to exist when the debt is reduced to $60,000.00? If the debtor can repay the larger amount, surely they can repay the smaller amount?

Regardless, even if this inconsistency were to be discounted, the Plaintiff is not entitled to an equitable adjustment of her student-loan obligation. As just explained, no matter the scope of the discharge being sought, the decision of *In re Miller* requires that, as a precondition to discharge, the "undue hardship" standard of § 523(a)(8) must be met. Thus, even accepting the Plaintiff's assertion that the first prong of the Brunner Test is satisfied, because she only has the partial ability to repay her student-loan debts, the burden remains on the Plaintiff to establish both the second and third prongs of the Brunner test. This she has not done.

The second prong of the Brunner Test requires the debtor to show that additional circumstances exist which indicate that the state of affairs giving rise to the debtor's inability to repay the student loan will likely persist for a significant portion of the repayment period. The contours of this requirement were outlined by the Court as follows:

> the second prong represents the substance of the "undue hardship" standard of §523(a)(8). As has been pointed out on more than one occasion, the clear purpose of the second prong is to ensure that the hardship the debtor is experiencing is actually 'undue,' as opposed to the garden variety financial hardship experienced by all debtors who file for bankruptcy relief.

Page 9

> The center of gravity of the second prong of the Brunner test is permanency or, what can be termed, an involuntary inability to improve one's financial circumstances. Stemming from this principle, this Court has consistently espoused the maxim, now cited to favorably by the District Court, that, (1) a debtor's distressed state of financial affairs must be the result of events which are clearly out of their control, and (2) the debtor must have done everything within their power to improve their financial situation. Although not a *sine quo non*, an often used explanation, and a common paradigm for an "undue hardship" case, is the existence of a permanent disability, whether physical and/or mental.

*Storey v. Nat'l Enter. Sys. (In re Storey)*, 312 B.R. 867, 871-72 (Bankr. N.D.Ohio 2004) (internal citations omitted). Most of the reported cases addressing the second prong of the Brunner test generally align with this, requiring a serious medical condition or some other unique circumstance to warrant a finding of "undue hardship." 4 Collier on Bankruptcy ¶ 523.14[2] (15th ed. rev. 2005).

Set within this framework, a central theme of the Plaintiff's complaint rested on her back injury, and its interference with her earning potential. The evidence in this regard is unequivocal. The Plaintiff, through no fault of her own, seriously injured her back in an auto accident; as a result of the injury, surgery was performed on the Plaintiff's back; the Plaintiff later aggravated her back injury while working as a nurse; the Plaintiff presently experiences pain from her back injury; and surgery may need to be again performed to address any further degeneration of the Plaintiff's back. (Ex. No. 7). Given these attributes, the Court does not question the gravity of the Plaintiff's medical condition. All the same, the Plaintiff's position finds difficulty on a number of different levels.

First, while the Plaintiff's back condition is undoubtably painful, and places limits upon some of her daily activities, the evidence does not tend to show that the condition has, or will in the foreseeable future, seriously impede upon the Plaintiff's financial earning power. To the contrary, the Plaintiff acknowledged that, so long as her job duties do not include any heavy lifting, she is able to continue working notwithstanding her back problems. The quality of the Plaintiff's work also does

Page 10

not seem to suffer, with the Plaintiff testifying that she is able to perform her job at a level where she can expect future pay raises. The Plaintiff also acknowledged that, although she presently works part time, her back condition does not prevent her from working full time.

Other considerations are likewise not indicative of the Plaintiff's compliance with the second prong of the Brunner Test. First, both she and her husband are still young, and otherwise healthy, thereby affording the Plaintiff ample time to repay her educational debt. Both of the Debtors also hold jobs which have provided their household with a substantial and steady stream of income in the past, a trend which the Plaintiff acknowledged should continue. The Plaintiff's part-time employment is also problematic, considering her acknowledgment that she has not actively pursued full-time employment, hence negating any notion that the Plaintiff, as required by the Brunner test, has done everything within her power to improve her financial situation.

Together, this evidence is simply not indicative of a debtor who has met their burden with respect to the second prong of the Brunner test. Particularly fatal to the Plaintiff's position is that, given the above considerations, there does not exist any meaningful casual relationship between the Plaintiff's medical condition, and her ability to repay her student loans. But, as this Court previously explained on the subject: "the mere existence of a medical condition, no matter the severity, is insufficient to form the basis of 'undue hardship' discharge. Instead, a strong nexus between the medical condition and its adverse effect on the debtor's terms of employment (specifically, a debtor's income) must be shown." *Morrow v. U.S. Dep't of Educ. (In re Morrow)*, 366 B.R. 774, 778 (Bankr. N.D.Ohio 2007). The Court then further observed that to "establish a nexus, mere speculation will not suffice; for everyone, there exists a possibility that a medical condition will arise that will adversely affect a person's terms of employment. Rather, a debtor must come forth with evidence showing that they presently have a medical condition sufficiently debilitating to affect their ability to maintain employment, and that such a condition is unlikely to improve." *In re Lowe*, 321 B.R. at 859. The Debtor has been unable to make such a showing.

Page 11

**Sarah Grant v. USA, Dept. off Education, et al.**
Case No. 07-3221

The third and final prong of the Brunner Test asks whether the debtor made a good faith effort to repay the student loans. The requirement serves the goal of helping to ensure that a debtor acts responsibly toward their creditor given that educational loans are extended without regards to a debtor's creditworthiness, with the expectation that the debtor will use their education to obtain remunerative employment so as to be able to repay the debt. *Stupka v. Great Lakes Educ. (In re Stupka)*, 302 B.R. 236, 243 (Bankr. N.D.Ohio 2003).

Based on its focus on a debtor's efforts at repayment, inherent in any good-faith analysis under the third prong of the Brunner test is whether and the extent to which the debtor actually made any voluntary payments on the obligation. *Morrow v. U.S. Dep't of Educ. (In re Morrow)*, 366 B.R. 774, 779 (Bankr. N.D.Ohio 2007). To that end, this Court has previously observed that the concept of good faith – which envisions, where possible, compliance with one's duties – will not prominently spring forth in the type of situation now before the Court, where only a limited number of voluntary payments have been made on the student-loan obligation. Still, it has also been observed that "good faith," is an amorphous concept, and therefore is largely dependent upon the differing circumstances of each case. *Id.* As such, whether a debtor has made payments on a student-loan obligation will not always be dispositive. *Id.*

However, even when looking beyond the minimal payments made on her student loan, the Plaintiff's other actions do not strike the Court as indicative of an effort made in good faith to repay her educational debt. First, good faith as applied in the context of § 523(a)(8) envisions that a debtor will have done everything reasonably within their power to maximize their income. *Educational Credit Mgmt. Corp. v. Mosko (In re Mosko)*, 515 F.3d 319, 324 (4th Cir. 2008). But as alluded to earlier, the Plaintiff, despite having the ability, has not made a concerted effort to increase her income by finding full-time employment. In addition, the Plaintiff's reliance on her back injury as a contributing factor to the existence of "undue hardship" also strains the notion of good faith.

Page 12

Sarah Grant v. USA, Dept. off Education, et al.
Case No. 07-3221

Good faith under the Brunner test contemplates that a debtor's failure to repay a student loan will normally have arisen as the result of factors beyond the debtor's reasonable control. *Flores v. United States Dep't of Educ. (In re Flores)*, 282 B.R. 847, 856 (Bankr. N.D.Ohio 2000). Yet, contrary to this idea, the Plaintiff's back injury was a known fact, having occurred before, not after, the Plaintiff incurred her student loans. Thus, while the Plaintiff's actual back injury was not her fault, the Plaintiff's knowledge of her condition when she incurred her educational debt gives rise to a certain level of risk assumption, making any connection between the Plaintiff's good faith effort to repay her student-loan debt to her back injury tenuous, at best.

A couple of other consideration also bend against the Plaintiff's position that she has sustained her burden under the third prong of the Brunner test. First, the Plaintiff received a tangible benefit as the direct result of her educational debt, with the Plaintiff obtaining employment in her chosen occupation, nursing, with increased earning power. *Stupka v. Great Lakes Educ. (In re Stupka)*, 302 B.R. 236, 244 (Bankr. N.D.Ohio 2003). Second, the Court is troubled by the Plaintiff's apparently nonchalant approach to her student loans.

Regarding the latter, what the Court finds problematic is that of the approximately $80,000.00 the Plaintiff borrowed, most of the indebtedness, about $55,000.00, went to pay for things other than the direct costs associated with her education. To be sure, the Plaintiff needed money for living expenses. But $55,000.00 seems excessive given the context.

To begin with, the Plaintiff only attended school for a little over two years. The Plaintiff's husband was also working while she attended school. Finally, it is noted that a few years prior to beginning school, the Plaintiff's household had received an infusion of $100,000.00 which, among other things, was allocated in such a way that the Debtors' expenses should have been lowered. For example, the Debtors used the money to pay credit-card debt, to purchase a vehicle and to make a substantial down payment on their home.

Page 13

**Sarah Grant v. USA, Dept. off Education, et al.**
Case No. 07-3221

Based upon these considerations, the Court is unable to find that the Plaintiff acted with the requisite good faith to sustain her burden under the third prong of the Brunner Test. Similarly, for the reasons set forth earlier, the Court is unable to conclude that the Plaintiff has sustained her burden under either the first or second prong of the Brunner Test. Accordingly, the Plaintiff has not established the existence of "undue hardship" and thus her student-loan obligations to the Defendants are nondischargeable pursuant to 11 U.S.C. § 523(a)(8).

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of both parties, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that, pursuant to 11 U.S.C. § 523(a)(8), those educational claims held by the Defendants, Educational Credit Management Corporation and The Education Resources Institute, against the Plaintiff/Debtor, Sarah D. Grant, be, and are hereby, determined to be NONDISCHARGEABLE DEBTS.

*IT IS FURTHER ORDERED* that this adversary proceeding, be, and is hereby, DISMISSED.

Dated: October 8, 2008

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 14

# CERTIFICATE OF SERVICE

Copies were mailed this 8th day of October, 2008 to:


United States of America, U.S. Department of Education
400 Maryland Ave., S.W.
Washington, D.C. 20202


H Buswell Roberts
1000 Jackson St
Toledo, OH 43604-5573

Nathan A. Hall
Shumaker, Loop & Kendrick, LLP
1000 Jackson
Toledo, OH 43604-5573

TERI
(The Education Resources Institute)
330 Stuart Street
Suite 500
P.O. Box 9123
Boston, MA 02117-9123


Sarah D. Grant
210 Pemberville Rd
Woodville, OH 43469-1051


Gordon R Barry
930 Spitzer Bldg
Toledo, OH 43604


Daniel N Sharkey
Butzel Long
Stoneridge West
41000 Woodward Avenue
Bloomfield Hills, MI 48304

ECMC Credit Management Corporation
Lockbox 8682
PO Box 75848
St Paul, MN 55175-0848

Frederick S. Coombs, III
Harrington, Hoppe & Mitchell, Ltd.
26 Market Street
Suite 1200
P. O. Box 6077
Youngstown, OH 44503

                                              /s/Dawn Serna-Gensch
                                      Deputy Clerk, U.S. Bankruptcy Court